## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**George W. Johnson, et al.,**

      **Plaintiffs,**

**v.**                                                                                **Case No. 3:05-cv-138**
                                                                              **Judge Thomas M. Rose**

**Christopher Knotts, et al.,**

      **Defendants.**

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO ALL CLAIMS, DOC. 36 AND 45, GRANTING DEFENDANTS' MOTIONS TO STRIKE, DOC. 51 AND 54, AND TERMINATING CASE.**

---

Pending before the Court are Defendants' Motions for Summary Judgment, Docs. 36 & 45, and Motions to Strike. Doc. 51 & 54. Defendants request summary judgment as to all Plaintiffs' claims stemming from alleged misconduct on the part of Defendant Christopher Knotts and alleged liability on the part of Defendant Five Rivers Metroparks. Docs. 36 & 45. Defendants additionally request that the Court strike the affidavit of Dr. Chester Robinson, Doc. 48, for lack of proper disclosure and timely filing. Doc. 51 and 54. Because Plaintiff failed to comply with the requirements of Fed. R. Civ. P. 26(a)(2) in disclosing Dr. Robinson as an expert witness and his affidavit contains conclusory findings which are medical in nature, Defendants' Motions to Strike will be granted. Because no genuine issues of material fact exist and Defendants are entitled to judgment as a matter of law with regard to these facts, Defendants' Motions for Summary Judgment will be granted as to all claims.

**I.      Background**

On April 22, 2004, Plaintiff George W. Johnson and his friend, Pascal "Ray" Netherly drove to the Possum Creek MetroPark to look at potential fishing spots. Doc. 10, ¶ 8; Doc. 38, 46:1-13. Defendant Christopher Knotts had observed Johnson not maintaining proper lane position as Johnson drove to the fishing area, however, Knotts did not consider that behavior suspicious given the driving habits normally observed in the park. Doc. 39, 50: 3-12. Johnson and Ray had each drunk one bottle of beer before arriving at the park. Doc. 38, 44:8-11. After parking his truck in a lot adjacent to a bass lake, Johnson and Ray walked to the lake's edge and read the sign regarding the fishing policy. Doc. 38, 48:15-25.

In returning to the truck, the pair saw Knotts pull into the lot in his patrol vehicle. Doc. 38, 49:1-7. As Netherly continued to the truck, Johnson stopped at Knott's vehicle, stood outside the passenger window and began conversing with Knotts about fishing. Doc. 38, 49:8-25.

In observing Johnson's approach and during the subsequent conversation, Knotts found Johnson's gait to be "unsteady," his eyes "bloodshot" and noticed the smell of an "alcoholic beverage on or about his person." Doc. 39, 53-54. Based on these observations, Knotts asked Johnson if he had been drinking. Doc. 38, 50:17-21; Doc. 39, 55. Johnson told him he had consumed one beer. Doc. 38, 50:20; Doc. 39, 55:12-18; 61:11-25. In Johnson's truck were four unopened bottles of beer. Doc. 38, 45:10. Knotts then requested that Johnson voluntarily submit to field sobriety testing. Doc. 38, 55:9; Doc. 39, 61.

Five Rivers employs a standard, three-part field sobriety test approved by the National Highway Traffic and Safety Administration. Doc. 36. Johnson agreed to Knotts' request and then attempted to complete three standard field sobriety tests known as the horizontal gaze nystagmus

test, the walk and turn test and the one leg stand test. Doc. 38, 55:11-56:24; Doc. 39, 62-67:12. Based upon his observations during the testing, Knotts arrested Johnson for suspicion of operating a motor vehicle while intoxicated. Doc. 39, 71:5-8. Johnson was placed in handcuffs and into the back of Knotts's patrol vehicle. Doc. 38, 58:7; 62:6-7; Doc. 39, 71:11-13; 80:10-12.

In placing Johnson in handcuffs, Knotts asserts that he followed his routine procedure to ensure proper handcuff placement, allowing two fingers' worth of space between the cuff and Johnson's arm and double locking them to prevent subsequent tightening upon the wrist. Doc. 39, 77:14-24; Doc. 36-2, ¶ 6. Johnson claims Knotts used excessive force in placing him the backseat of the police cruiser. Doc. 10 ¶13. Johnson testified that the cuffs did not begin hurting his hands until they were en route to the police station and he "was laying on 'em" at which time he asked Knotts to loosen the cuffs. Doc. 38, 62:8; 63:5-22. The trip to the police station took longer than expected because Knotts became lost. Doc. 39, 82:22-23. When they arrived, Johnson again stated the cuffs needed loosening. Doc. 38, 67:7-8. Upon Knotts receiving permission from the officer at the station, the cuffs were removed. Doc. 38, 67:8-25; Doc. 39, 85:1-15.

Johnson's breathalizer test did not register the presence of alcohol. Doc. 38, 68:1-11. Knotts then returned Johnson to the park to retrieve his truck. Doc. 38 71:13-14; Doc. 39, 86:13-16. On the return trip, Johnson mentioned pre-existing physical conditions which may have affected his field sobriety test results. Doc. 39, 86:17-10. These included conditions related to exertion of physical labor, but did not include his status as a diabetic who routinely does not eat throughout the day. Doc. 38, 13:24-14:1-11; Doc. 38, 108:4-24; Doc. 38, 56:1-5.

Johnson returned to his home, took a bath and then went to the hospital where his wrists were x-rayed. Doc. 38, 74:18-75:18. He was given a prescription for pain medication and instructed to

follow up with his regular physician. Doc. 38, 76:10-15. On June 4, 2004, Johnson filed a complaint with the Five Rivers' Ranger Division (Doc. 38-4) and in that same month, met with an attorney regarding the alleged incident. Doc. 38, 76:24-77:4.

Johnson filed his complaint on April 21, 2005 and amended it February 6, 2006. Doc. 1; Doc. 10. In the complaint, Johnson alleges the following six claims: 1) deprivation of constitutional rights under 42 U.S.C. §1983; 2) false arrest; 3) intentional infliction of emotional distress; 4) loss of consortium on the part of his wife; 5) supervisory and municipal liability; and 6) vicarious liability. Doc. 10 ¶¶ 19-29. On March 16, 2007, Johnson voluntarily dismissed as defendants: Montgomery County Sheriff's Office, Richard Whalen and Jerry Ditmer. Doc. 33; Doc. 34. Johnson's claims against Defendants Five Rivers and Christopher Knotts remain pending and the remaining Defendants filed motions for summary judgment on April 2, 2007 and April 30, 2007 respectively. Doc. 36, 45.

Defendants have both moved the Court to strike (Doc. 51 and 54) the affidavit of Dr. Chester Robinson (Doc. 48) which was offered by Johnson in opposition to Defendants' Motions for Summary Judgment (Doc. 36 and 45).

## II. Standard of Review

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250, 106 S. Ct. 2505 (quoting Fed. R. Civ. P. 56(e)). Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 106 S. Ct. 1348 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324, 106 S. Ct. 2548.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255, 106 S. Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A

Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

**III. Analysis**

The Court will first resolve Knotts' motion for summary judgment, which is dispositive of all claims against both defendants. In the course of this analysis, the Court will explain its decision on the motion to strike expert witness testimony.

**A. Johnson's State Law Claims**

Johnson alleges state common law claims of false arrest, loss of consortium and intentional infliction of emotional distress against the Defendants. Doc. 10 ¶¶ 19-23. Additionally, Five Rivers faces a state common law claim of vicarious liability. Doc. 10 ¶29.

**1. False Arrest**

Johnson claims he was subjected to a false arrest because he was arrested without probable cause. Doc. 10 ¶ 20. False arrest occurs when a plaintiff is deprived of his liberty without lawful justification. *Rogers v. Barbera*, 164 N.E.2d 162, 164 (Ohio 1960). The tort is not excused by a defendant with good intentions nor created by a defendant with bad intentions. *Id.* To prevail on a claim of false arrest, a plaintiff must show he was intentionally and unlawfully detained. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005). Arrests based upon probable

cause defeat claims of false arrest because they are considered lawful detentions. *Id.* When examining probable cause to make an arrest, the court must look to the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (citation and internal punctuation omitted).

Here, the evidence admissible at trial, even when considered in a light most favorable to Johnson, evince probable cause to arrest. Johnson had not maintained his lane while driving his motor vehicle. Johnson had bloodshot eyes and an unsteady gait. He admitted to have been drinking. Johnson failed a field sobriety test. These facts support probable cause to arrest the driver of a motor vehicle. Therefore, Knotts' motion for summary judgment as to this claim will be granted.

**2.    Intentional Infliction of Emotional Distress**

Johnson alleges in his third claim that he suffered emotional distress intentionally inflicted by Defendants. Doc. 10 ¶ 21. Johnson claims the Defendants acted in such a way as to cause him "unreasonable, excessive, and severe" emotional harm. Doc. 10 ¶ 21.

In *Yeager v. Local Union 20, International Brotherhood of Teamsters*, the Supreme Court of Ohio adopted the standard to determine those claims of intentional infliction of emotional distress that would be actionable. 453 N.E.2d 666, 671 (1983). Namely, individuals are subject to liability for emotional distress and any bodily harm resulting from it when their "outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Id.* A defendant's intention to act intentionally, criminally, or in a manner to cause emotional distress is not sufficient for

liability to attach. *Id.* Liability has been found in cases where the conduct's outrageous character and extreme degree exceeds all "possible bounds of decency." *Id.* The civilized community would look upon such behavior as "atrocious and utterly intolerable." *Id.* Specifically, the plaintiff must show:

1) the defendant either intended to cause emotional stress, or knew or should have known the actions taken would result in serious emotional harm to the plaintiff;
2) the defendant's conduct was extreme and outrageous;
3) the defendant's actions proximately caused the plaintiff's psychic injury; and
4) the mental distress suffered by plaintiff was serious.

*Culberson v. Doan*, 125 F. Supp. 2d 252, 281 (S.D. Ohio 2000).

Nothing connected to Knotts' actions exceeds all possible bounds of decency. Handcuffing a suspect under arrest is expected in a civilized society. Even if this action could have been taken with greater care, Knotts' actions were not outrageous. Therefore, the Court will grant Defendants' motion for summary judgment as to this issue.

**B.     Johnson's Civil Rights Claims**

Johnson alleges that Five Rivers, through the actions of Knotts, deprived Johnson of his constitutional rights and in doing so, violated 42 U.S.C. § 1983. Doc. 10 ¶19. Johnson claims that he endured false arrest, excessive force, and deliberate indifference to his serious medical needs in violation of the Fourth Amendment. *Id.* Additionally, Johnson claims the alleged incidents deprived him of the equal protection guaranteed to him by the Fourteenth Amendment. *Id.*

**1.     False Arrest**

Johnson alleges that Knotts' arrest of him was unconstitutional. The Fourth Amendment requires that "a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime." *Williams ex rel.*

-8-

*Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  Probable cause is defined by asking "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck*, 379 U.S. at 91.  "Probable cause is assessed 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)).  The Ohio Revised Code makes it a criminal act to drive an automobile under the influence of alcohol.  See Ohio Rev. Code § 4511.19.

Given the facts and circumstances surrounding Johnson's arrest, Knotts had probable cause to make the arrest.  These circumstances include Knotts' observation of Johnson's inability to maintain his proper traffic lane while driving into the park.  Doc. 39, 50:3-12.  Knotts also noted Johnson's unsteadiness, his bloodshot eyes and a smell of alcohol on or about his person.  Doc. 39, 53-54.  Johnson admitted consuming alcohol (Doc. 38, 50:20; Doc. 39, 55: 12-18; 61:11-25) and alcohol was observed in his vehicle. Doc. 39, 58:9-24.  Johnson also failed three standardized field sobriety tests.  Doc. 39, 36:20-24; 71:3-8.

Knotts' observations of Johnson coupled with Johnson's admissions establish as a matter of law that Knotts had probable cause to arrest Johnson on suspicion of driving under the influence.  Therefore, Knotts' motion for summary judgment will be granted as to this issue.

**2.      Excessive Force**

Johnson alleges that in arresting him, Knotts used unconstitutionally excessive force.  Doc. 10 ¶ 13.  In his amended complaint, Johnson states that Knotts cuffed his hands behind his back in

a manner that was unnecessarily and excessively tight. *Id.* Johnson additionally claims that Knotts positioned him in the cruiser in a painful and awkward way. *Id.*

A law enforcement official's use of excessive force while carrying out an arrest may give rise to a claim under 42 U.S.C. § 1983. *Tennessee v. Garner*, 417 U.S. 1 (1985). Excessive force claims are analyzed according to the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). To properly apply this standard, a court must give careful consideration to the facts and circumstances surrounding each case including the crime's severity and the demeanor of the suspect. *Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999)(citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The analysis takes into consideration the level of threat posed by the suspect and whether or not the suspect resists arrest or attempts to flee. *Id.* The question is whether a particular seizure is justified by the totality of the circumstances, and the question is answered "without regard to [the officer's] underlying intent or motivation." *Bass*, 167 F.3d 1041, 1046 (citing *Graham*, 490 U.S. at 397). In this analysis, the perspective of a reasonable officer on scene is used as the basis for determining "reasonableness." *Id.* (citing *Graham*, 490 U.S. at 396).

An excessive force claim may be maintained when a law enforcement official applies handcuffs too tightly to an individual's wrists. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). A distinction is drawn, however, between the application of handcuffs in a manner that is unnecessarily and excessively tight and the inadvertent tightening of properly applied handcuffs during an individual's transport. *Meadows v. Thomas*, 117 Fed. Appx. 397, 405 (6th Cir. 2004). The Sixth Circuit has noted that although a plaintiff may go before a jury when there is evidence that could establish a claim of being handcuffed excessively tightly, it does not follow that plaintiffs who

show properly applied cuffs that became tight and uncomfortable through no action of the officer must also go before a jury. *Id.* Likewise, a constitutional violation does not arise simply by placing an individual in the cramped backseat of a police vehicle. *Todhunter v. Swan*, 2006 U.S. Dist. LEXIS 90084 (E.D. Mich. Nov. 29, 2006).

In this case, the uncontested evidence is that Knotts spaced and double locked the cuffs as he had been trained to do. Doc. 39, 77:14-24. Johnson stated upon initial application, the handcuffs were not uncomfortable, but became so only after the transfer to Perry Township had commenced and his weight was resting on his wrists. Doc. 38, 62:8; 63:5-22. Johnson also stated that aside from telling Knotts that the handcuffs were too tight, he said nothing to the officer during the drive. Doc. 38, 63:24-64:1.

Given these admissions by the Johnson, no reasonable juror could conclude that Knotts used unconstitutionally excessive force on Johnson. Because an excessive force claim cannot be established against Knotts, granting Knotts' motion for summary judgment as to this issue is also proper.

**3.     Deliberate Indifference to Serious Medical Need**

Johnson alleges in his § 1983 claim that Knotts engaged in deliberate indifference toward his serious medical needs. Doc. 10 ¶ 19. The Eighth Amendment prohibits prison officials from allowing unnecessary pain to be inflicted upon an inmate through their deliberate indifference to that inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Under the Due Process Clause of the Fourteenth Amendment, the same protection is extended to pretrial detainees. *Bell v. Wolfish,* 441 U.S. 520, 545 (1979). For both convicted prisoners and pretrial detainees, a claim under § 1983 can arise from the deliberate indifference to their medical needs. *Roberts v. City of Troy*, 773

F.2d 720, 723 (6th Cir. 1985). To support a claim of deliberate indifference, a plaintiff must meet two requirements. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). First, the plaintiff must meet an objective requirement by showing that his need was, indeed, serious and ignored by an officer. *Id.* The seriousness of a medical need is apparent when a physician makes a diagnosis and recommendation for treatment or when a lay person would easily recognize the need for a physician's attention. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004). Second, the subjective prong requires the plaintiff show an awareness on the officer's part of facts from which the officer could infer plaintiff faced a substantial risk of serious harm, and that the officer actually drew that inference. *Farmer*, 511 U.S. at 837.

Here, Johnson states that aside from the one comment about the tightness of the handcuffs, he said nothing to Knotts during their drive to the police station. Doc. 38 63:23-25; 64-1. Johnson took himself to the hospital hours after returning home and taking a bath. Doc. 38 74: 23-25; 75:1-7. Johnson underwent x-rays, received pain medication and was advised to see his regular physician for a follow-up exam. Doc. 38 75:15-18; 76:10-19. Johnson provides no evidence demonstrating he sought medical assistance from Knotts or that Knotts created obstacles to Johnson receiving care. Johnson states that he did not notice the swelling on his wrists until after returning home and bathing. Doc. 38 74:23-25; 75:1-2. The facts presented as evidence do not demonstrate that a substantial, serious risk to Johnson's health was present. Johnson's claim would require Knotts to have been aware of something or to have inferred something about Johnson that Johnson did not notice until hours later.[1]

---

[1] Defendants have joined in a motion to strike the affidavit of Dr. Chester Robinson. Doc. 48. Defendants argue that Dr. Robinson's testimony is that of an expert witness and because he was not properly disclosed pursuant to Federal Rule of Civil Procedure 26(a)(2), his affidavit should be

Given these admissions by Johnson, a deliberate indifference to medical need claim cannot be established against Knotts. Therefore, granting both Knotts' motion for summary judgment as to this issue is proper.

**4.      Equal Protection**

Finally, Johnson asserts a violation of his rights under § 1983 in regard to the equal protection afforded by the Fourteenth Amendment. Doc. 10, ¶19. Johnson appears to allege that he received disparate treatment based upon his race when Knotts selectively enforced the law. *Id.*

---

stricken. Johnson counters Dr. Robinson was disclosed on a lay witness list and that he is "more of a medical fact witness" whose affidavit is "an assertion of medical facts from being a treating physician as well as medical assessments drawn therefrom."

In *Abrahamsen v. Trans-State Express*, the Sixth Circuit characterized discovery as a system "designed to increase the likelihood" each case would see justice served and not a system of "gamesmanship and deception" in which the party with the best ball hiding skills wins. 92 F.3d 425, 428-29 (6th Cir. 1996). To that end, Fed. R. Civ. P. 26(a)(2)(A) requires the disclosure of any person who may present evidence during the trial under Federal Rules of Evidence 702, 703 or 705. Fed. R. Civ. P. 26(a)(2)(B) requires the filing of an expert witness report by any expert witness retained for the purposes of providing expert testimony.

Johnson relies heavily upon *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007), a case that focused upon whether a treating physician, *properly identified as an expert witness*, needed to file a written expert witness report. 482 F.3d 866.

Here, the determination of whether Dr. Robinson must file an expert witness list is secondary to whether the nature of Dr. Robinson's testimony is appropriate given his status as a lay witness. Johnson failed to disclose Dr. Robinson as an expert witness and instead identified him as a *lay* witness who would testify "regarding his assessment and treatment of Mr. Johnson following" the alleged incident. Doc. 26, ¶10. Dr. Robinson's affidavit, however, states a finding of medical certainty based upon inferences and conclusions drawn from data outside the scope of his own treatment of Johnson. Dr. Robinson offers very sparse factual descriptions or assessments of Johnson's condition and makes a rather conclusory pronouncement of causation. This falls outside the scope of the factual testimony a lay witness would be permitted to provide.

Johnson characterizes this failure to disclose, if established, as harmless. Failure to properly characterize and disclose the nature of testifying witnesses cannot be deemed harmless, even if an innocent misunderstanding of the rules of evidence and procedure precipitated the failure. *Sommer v. Davis,* 317 F.3d 686, 692 (6th Cir. 2003). Thus, because Johnson failed to comply with the rules of discovery outlined in Fed. R. Civ. P. 26(a)(2), Defendants' joint motion to strike will be granted.

Establishment of a claim that an arrest violates the Equal Protection Clause of the Fourteenth Amendment requires a plaintiff prove "both a discriminatory purpose and a discriminatory effect," *Gardenshire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000), by means of a three-part test:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*Id.* at 319. Proof of the second element may not be based upon a plaintiff's membership in a protected class, but must be supported by admissible evidence. *Mitchell v. Boelcke*, 440 F.3d 300, 305 (6th Cir. 2006).

Johnson has failed to satisfy the first and second requirements of a selective enforcement claim. First, Johnson has provided no evidence that Knotts, or other officers employed by Five Rivers, treated drivers outside Johnson's racial group any differently when they were suspected of driving while impaired. Moreover, there is no evidence that Knotts had a discriminatory purpose. Defendants are thus entitled to summary judgment on this issue as a matter of law.

**C.     Derivative Claims**

Johnson has also alleged various derivative claims: that Defendants' actions directly and proximately caused his wife a loss of consortium and companionship, Doc. 10 ¶¶ 22-23; that Five Rivers faces supervisory and municipal liability based upon its inability or unwillingness to properly train and discipline Knotts, its approval of the misdeeds Knotts' allegedly committed, and a concerted effort to deprive Johnson of his constitutional rights, Doc. 10 ¶¶24-28; and that Five Rivers is vicariously liable for state law claims based upon Knotts' actions. Doc. 10 ¶ 29. Because each of

these claims is derivative in nature, presupposing the existence of an underlying viable tort claim, and because the Court has determined that it will grant summary judgment in all of the potential underlying claims, the Court will grant summary judgment on these claims as well.

### IV. Conclusion

Because there was probable cause to arrest Johnson and because Knotts did not intentionally over tighten Johnson's handcuffs or willfully ignore that they had possibly been over tightened, and because there is no evidence Knotts was motivated by race in arresting Johnson, Defendants' motions for summary judgment, Doc. 36 and 45, are **GRANTED**. Because Johnson failed to comply with the rules of discovery required by Fed. R. Civ. P. 26(a)(2), Defendants' motions to strike Doc. 48 are also **GRANTED**. Doc. 51 and 54. The captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, September 5, 2007.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE